IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BERNARD C MCGEE,

     Plaintiff,

v.                                       CASE NO. 5:11-cv-80-RS-GRJ

TIFFT, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court for the purposes of making factual determinations regarding Plaintiff's contention that his administrative remedies were excused because they were rendered unavailable to him because of threats of retaliation. For the reasons discussed below, it is recommended that judgment in favor of Defendants remain undisturbed and this case be dismissed in its entirety.

## I. INTRODUCTION

The relevant factual and procedural background is as follows: Plaintiff, a state prisoner proceeding *pro se*, alleges that Defendant Bush, a correctional officer, solicited another inmate to assault Plaintiff. The inmate refused and instead told Plaintiff of the interaction. Several months later, Plaintiff was attacked by unknown assailants and seriously injured. Plaintiff implies in his amended complaint that Defendant Bush was responsible for the attack and the Defendant Tifft, the Warden, ignored his grievance and failed to protect him from the attack. (Doc. 7.)

Plaintiff maintained throughout the case thus far that he filed two grievances in connection with the alleged solicitation by Defendant Bush, but received no response.

Defendants requested the Court to dismiss the case, contending that Defendant failed properly to exhaust his administrative remedies. (Doc. 28.)  There is no record that Plaintiff filed any grievances related to Defendant Bush's alleged solicitation  – Plaintiff has not produced any copies of the alleged grievances, and Defendant produced affidavits of FDOC employees who attested that no record of the grievances existed. (Docs. 28, 36, 37.)  The undersigned weighed the evidence in the record and determined that Plaintiff had failed to exhaust his administrative remedies, and that the motion to dismiss was due to be granted.  (Doc. 42.)  The District Judge adopted the Report and Recommendation (Doc. 44) and judgment was entered in favor of Defendants.  (Doc. 45.)

Plaintiff then timely filed a motion for reconsideration (Doc. 46), arguing that his administrative remedies were rendered unavailable to him.  Plaintiff did not make any specific allegations of threats from prison officials that rendered his administrative remedies unavailable to him, but instead the broad statement that "the administrative intervention has disappeared due to the long standing practices and procedures of the defendant's [sic] and those acting in concert with them." (*Id.* at p. 2.)

The District Judge found that "despite the fact that Plaintiff has represented that he did file both an informal grievance and a formal grievance, his First Amended Complaint may proceed if his unavailability argument succeeds," pursuant to Fed. R. Civ. P. 8(d)(2).  (Doc. 48.)  Rule 8(d)(2) provides that "A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Pursuant to the District Judge's Order, the case was referred back to the undersigned for the limited purpose of resolving any factual issues relating to Plaintiff's alternative argument that he could not exhaust his administrative remedies because they were unavailable to him under *Turner v. Burnside,* 541 F.3d 107 (11th Cir. 2008). In order to address these factual issues, an evidentiary hearing was held on February 27, 2013.

## II.  EVIDENCE PRESENTED AT THE HEARING

### A.  Plaintiff's Evidence

At the hearing, Plaintiff presented evidence in the form of his own testimony and three items of documentary evidence.  Plaintiff testified that in 2007, he filed several grievances.  As a result, some time in May-June 2008, Defendant Bush solicited Plaintiff's cell mate to assault Plaintiff.  Plaintiff's cell mate instead told Plaintiff about the encounter, and each of them filed grievances with the warden.  Plaintiff testified that he dropped his grievance in a box located on the way to the dining hall.  Staff would collect the grievances each morning, and the warden was supposed to stamp a copy and return it to the inmate.  Plaintiff testified that after 25-26 days, he had still not received a response to his informal grievance, so he filed a grievance of a sensitive nature with the FDOC office in Tallahassee.  Plaintiff testified that he never received a response to either grievance.

Plaintiff stated that in January 2009, three men came into his cell and attacked him, resulting in a near-amputation of his leg.  After a week-long hospital stay, Plaintiff stayed in the infirmary at Gulf C.I. Annex for 30 days.  Plaintiff testified that he did not file grievances after the January 2009 attack because he thought he might be in

danger.  Plaintiff also testified that he had no direct contact with Sgt. Bush after the January 2009 attack because in 2009 Sgt. Bush had been moved to another area of the prison where he did not have direct contact with Plaintiff.  On cross-examination, Plaintiff testified that he did not file additional grievances because he thought it "was no use" since he did not receive responses from the Warden or the Tallahassee office.

Plaintiff's Exhibit A was an x-ray of his ankle on January 27, 2009, following the attack.  Plaintiff's Exhibit B was a carbon copy an informal grievance filed by Plaintiff's cell mate (inmate's name was redacted) on December 10, 2007.  The inmate alleged that a Sgt. Johnson was unlocking the cell he shared with Plaintiff and then ordering them to lock the door again.  Plaintiff's Exhibit C was a February 26, 2007 informal grievance submitted by Plaintiff alleging that a captain (whose name is redacted) and a sergeant removed him from his cell and threatened to take his life.  Plaintiff also alleged in the grievance that he was placed in a cell with another inmate who had cut his wrists multiple times, and that an officer told the other inmate jokingly to stab Plaintiff.

B.  Defendants' Evidence

Defendants presented three witnesses at the hearing, in addition to eight pieces of documentary evidence.  The first witness for Defendants was Gina Eddy, Correctional Services Assistant Administrator at the Lake Butler Reception and Medical Center (RMC).  Ms. Eddy testified that inmate grievances are kept in their classification files, and this file travels with the inmate to every institution.  Grievances are submitted in a locked box, are picked up every business day, and then processed and distributed. As part of the processing, both a handwritten and computer record is made of the grievance, using a hard copy grievance log and a computer entry.

The next witness for Defendants was John Curtis Green, who works in the FDOC's central office investigating and responding to grievance appeals. He receives, logs, review, investigates, and responds to grievance appeals. The appeals are either approved, denied, or returned without action. He testified that if an inmate does not get a response to an informal grievance within 10 days, he can file a formal grievance, and that if an inmate does not receive a response to a formal grievance within 20 days, he can file a grievance appeal. These are the options available to inmates who do not receive responses to grievances.

Finally, Defendants called John Sloan to testify. Mr. Sloan worked at Gulf C.I. from 2007 to 2012 and was an assistant warden. He is currently assistant warden at Taylor C.I. Mr. Sloan testified that his duties include serving as the acting warden in the warden's absence as well as the grievance coordinator. The procedure for informal grievances would be to use an inmate request form and scratch out the words "inmate request" and note that it was an informal grievance. For formal grievances, they would go into a locked box. They were received, stamped, and collected each business day. Inmates would receive a receipt within 10 days. Grievances of a sensitive nature would go straight to Tallahassee. Then, the Inspector General's office would decide whether to investigate or return to prison administrators. If a staff member interfered with the inmate grievance process, they could be subject to disciplinary action. Mr. Sloan also testified that Defendant Tifft worked at Gulf C.I. from June 2007 to August 21, 2009.

Defendants' exhibits consisted of eight sets of business records. Exhibit A was a collection of all grievances (informal and formal) filed by Plaintiff. The grievances Plaintiff has maintained that he filed in 2008 regarding the allegations against

Defendant Bush are not contained in these records. Exhibit B was a record of grievances filed by all inmates at Gulf C.I. from January 1, 2009 through March 31, 2011. Exhibit C was Plaintiff's transfer history record. Exhibit D was a record of Plaintiff's acknowledgment of receipt of an orientation on the inmate grievance procedure, dated March 9, 2005. Exhibit E was a record of all grievance appeals filed by Plaintiff, none of which pertain to the allegations underlying the instant suit. Exhibit F was a grievance log for all grievances filed by all inmates at the Lake Butler RMC from May 2009 through January 31, 2010. Exhibit G was a grievance log for all grievances filed by all inmates at the Northwest Florida Reception Center - Annex during June 2009. Finally, Exhibit H was personnel records of Warden Tifft reflecting that he transferred to Santa Rosa C.I. on August 21, 2009.

## III. STANDARD OF REVIEW

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue, v. Pearson,* 2011 U.S. Dist. LEXIS 66950, *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005)). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *See Jones v. Bock,* 549 U.S. 199, 211 (2002).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12(b) and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008). "Where exhaustion–like jurisdiction, venue, and service of process–is treated as

a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Bryant*, 530 F.3d at 1376. Affording the district court this discretion advances the purposes of the PLRA: "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement[.]" *Id.* at 1376-77 (internal citations omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082. If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*

However, the Eleventh Circuit has held that "a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement . . ." *Turner*, 541 F.3d at 1085. To qualify for this exception from the exhaustion requirement, two conditions must be met: "(1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the

threat is one that would deter a reasonable inmate of ordinary firmness and fortitude

from lodging a grievance or pursuing the part of the grievances process that the inmate

failed to exhaust." *Id.*

## IV. <u>DISCUSSION</u>

As discussed in detail in the previous Report and Recommendation (Doc. 42)

and adopted by the District Judge, Plaintiff failed to complete the administrative remedy

process provided by the Florida Department of Corrections.  Plaintiff contended that he

filed grievances at the institutional level and with the FDOC Secretary's office.  He

offered only his assertion that he had done so and provided no evidence to support this

allegation.  (Docs. 7, 29, 36, 27.)  Plaintiff's contention that he filed grievances was

controverted by affidavits submitted by two FDOC records custodians who each

attested that there was no record of a grievance or grievance appeal related to an

allegation that Sgt. Bush solicited another inmate to start a fight with Plaintiff.  (Docs.

28, Exhs. B, C.)  Plaintiff failed to properly exhaust his administrative remedies and the

motion to dismiss was granted on this basis.

After being given the opportunity to pursue a theory of unavailability and present

evidence at a hearing, it is clear that Plaintiff's alternative contention that the remedy

was made unavailable "due to longstanding practices and procedures" of the

defendants and various unnamed conspirators also fails.  As he has maintained

throughout the instant action, Plaintiff testified at the hearing that he did in fact file

grievances related to the allegations giving rise to this suit.    Plaintiff testified that he

dropped his grievance in a box located on the way to the dining hall.  After 25-26 days,

he had still not received a response to his informal grievance, so he filed a grievance of

a sensitive nature with the FDOC office in Tallahassee. Plaintiff testified that he never received a response to the second grievance. Plaintiff testified that Plaintiff testified that he did not file grievances after the January 2009 attack because he thought he might be in danger. On cross examination, Plaintiff testified that he did not file additional grievances because he thought it "was no use" since he did not receive responses from the Warden or the Tallahassee office. Plaintiff said he had no direct contact with Sgt. Bush from mid 2008 through 2009.

Plaintiff has not met the conditions set forth in *Turner* so as to lift the exhaustion requirement, specifically, that serious threats of substantial retaliation actually deterred him from pursuing the grievance process. Plaintiff's testimony at the hearing supported what he has maintained all along—that he filed grievances. He offered no explanation for why there was no record of these particular grievances at the institutional or central office level. Furthermore, Plaintiff has never made any specific allegation that he was threatened by prison officials. Other than testifying to a generalized fear, he has not alleged that prison officials actually made any serious threats of substantial retaliation.

Even assuming, *arguendo*, that Plaintiff has adequately alleged a threat, he was not actually deterred from filing grievances—he maintains that he did file two grievances. To the extent he was deterred from filing grievances after the January 2009 attack, Plaintiff testified that he thought he might be in danger, though he did not point to a specific incident or threat other than a generalized fear or suspicion of prison officials.

Moreover, to the extent that Plaintiff suggests he was in fear of retaliation by Sgt. Bush or Warden Tift, the evidence submitted at the hearing directly refutes this assertion. Sgt. Bush was transferred from Plaintiff's dormitory to the front gate of the

correctional facility shortly after the May-June 2008 alleged solicitation to have another inmate attack Plaintiff. From mid 2008 through 2009 Sgt. Bush was assigned to the front gate and Plaintiff readily admitted that during this period of time he did not have any contact with Sgt. Bush. Warden Tift was transferred to Santa Rosa C.I. in August 2009 so to the extent that Plaintiff alleges he was in fear of filing grievances because they would be given to the Warden Plaintiff's excuse was no longer applicable after that date. In short, Plaintiff's veiled suggestion that he could not file grievances because he was in fear of Sgt. Bush and Warden Tift is directly contrary to the evidence presented.

On cross examination, Plaintiff also testified that there was "no use" to file additional grievances because the first two had been ignored. Neither Plaintiff's generalized fears, nor his frustration with grievances that were allegedly ignored are sufficient to meet the *Turner* requirements to lift the exhaustion requirement.

In sum, Plaintiff has failed to allege any specific threat by a prison official and has not demonstrated that he was actually deterred from pursuing the grievance process. To the contrary, he maintains that he did file grievances that are inexplicably missing from his files both at the institutional level and at the Secretary's office. He only offers a conclusory allegation of a general fear of some type of retaliation and "long standing practices and procedures of the defendant's [sic] and those acting in concert with them." (Doc. 46.) Even construing the allegations in Plaintiff's filings and testimony liberally, it cannot be said that his access to the grievance process was made unavailable.

## V. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **RECOMMENDED** that this action be

**DISMISSED** for failure to exhaust administrative remedies under Plaintiff's alternative

theory of exhaustion–unavailability–and that judgment in favor of Defendants remain

undisturbed.

      **IN CHAMBERS**  this 21st day of March 2013.

                  *s/Gary R. Jones*

                  GARY R. JONES
                United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>

    **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**